[Cite as *State v. Carr*, 2024-Ohio-4471.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellant

v.

DEMETRIUS CARR
DEMONTE CARR

    Appellees

C.A. Nos.     30879
                30880

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    CR 2023-01-0233-A
              CR 2023-01-0233-B

DECISION AND JOURNAL ENTRY

Dated: September 11, 2024

SUTTON, Presiding Judge.

**{¶1}** Appellant, the State of Ohio, appeals from two orders of the Summit County Court of Common Pleas, excluding testimony and evidence the State sought to introduce at the trials of Appellees, Demonte and Demetrius Carr ("the Carrs"). This Court reverses.

I.

**{¶2}** The Carrs were each indicted on charges of aggravated murder, murder, felony murder, felonious assault, having weapons under disability, and multiple firearm specifications. Demonte Carr was indicted in Criminal Case No. CR2023-01-0233(A). Demetrius Carr was indicted in Criminal Case No. CR2023-01-0233(B). The State theorized that the Carrs murdered J.A. the day after he murdered their brother. It sought to prove its theory through a report generated by CyberCheck and testimony from Adam Mosher, the creator of that software. The report purported to show that (1) J.A. was present in the area where the Carrs' brother was murdered

around the time of his death, and (2) the Carrs were present in the area where J.A. was murdered around the time of his death. The defense received a copy of the CyberCheck report in discovery.

{¶3} On June 7, 2023, the attorneys for Demonte Carr sent a letter to the State. The letter requested information about CyberCheck and Mr. Mosher. It included requests for the sources, data, and programs CyberCheck used to generate its report, including any proprietary machine learning software, artificial intelligence software or algorithms, proprietary code structures, third party open source intelligence applications, and data gathering APIs. Defense counsel reserved the right to file a motion to compel if the State failed to provide the requested items.

{¶4} On September 20 and 21, 2023, respectively, the Carrs filed nearly identical motions to compel. They moved to compel the State to provide them with the information Demonte Carr had requested in July. They argued the information was necessary to properly evaluate a *Daubert* and/or suppression challenge and to help their experts prepare for trial. Without access to Mr. Mosher's software, they argued, their experts were unable to evaluate his work and the conclusions reached in the CyberCheck report. They asked the trial court to hold a hearing and exclude the CyberCheck evidence if the State failed to respond to the discovery request.

{¶5} The trial court held a motions hearing at which the State, defense counsel for each of the Carrs, and Mr. Mosher appeared. The hearing took place on September 29, 2023, six days before the trial was set to commence in both cases. At the conclusion of the hearing, the trial court notified the State that it would be granting the motions to compel. It gave the State 48 hours to provide the requested discovery to defense counsel. The court later journalized its order.

{¶6} The State filed a written response to the trial court's order. The State indicated that the items defense counsel had requested were not in its possession. The State also indicated that the Carrs had made no attempt to subpoena those items directly from Mr. Mosher/CyberCheck,

the third-party private vendor in possession of the requested items. The State argued the only appropriate discovery sanction, if any, was for the trial court to continue the trial and allow the Carrs to subpoena the information they needed directly from Mr. Mosher/CyberCheck.

**{¶7}** The trial court reviewed the State's written response and issued an identical order in both cases. Citing Crim.R. 16(L)(1), the court excluded any evidence regarding CyberCheck from the scheduled trial. The State immediately appealed from the trial court's orders in each case. This Court consolidated the two appeals for briefing, argument, and decision.

**{¶8}** The State's appeals are now before us. The State assigns one error for review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING TESTIMONY AND ASSOCIATED EVIDENCE FROM THE CYBERCHECK REPORT.

**{¶9}** In its sole assignment of error, the State argues the trial court abused its discretion when it excluded the CyberCheck evidence based on a perceived violation of Crim.R. 16. For the following reasons, we sustain the State's argument.

**{¶10}** Crim.R. 16 governs discovery in criminal cases. The rule is designed "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). "The rule aims ''to prevent surprise and the secreting of evidence favorable to one party.'" *State v. Huguley*, 2017-Ohio-8300, ¶ 16 (9th Dist.), quoting *State v. Darmond*, 2013-Ohio-966, ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987).

{¶11} Under Crim.R. 16(K), a party who wishes to introduce expert testimony must supply opposing counsel with a summary of their expert's qualifications and "a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion . . . ." Crim.R. 16 also gives defendants the right to have copies or photographs of certain items "which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule . . . ." Crim.R. 16(B). The rule "requires the state to produce only items in the prosecutor's custody, and it is sufficient to inform the defendant of the whereabouts of documents in possession of another, if such documents are to be used against the accused at trial." *State v. Luskin*, 1990 WL 203479, *2 (9th Dist. Dec. 12, 1990).

{¶12} If a party fails to comply with Crim.R. 16 or a discovery order of the court, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1). "[A] trial court must inquire into the circumstances of the alleged violation of Crim.R. 16 and must impose the least severe sanction consistent with the purpose of the discovery rules." *State v. Darmond*, 2013-Ohio-966, ¶ 27. The court also should consider: "(1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *Id.* at ¶ 35.

{¶13} "We review a trial court's decision regarding a Crim.R. 16 discovery violation for an abuse of discretion." *State v. Pieronek*, 2019-Ohio-4305, ¶ 20 (9th Dist.). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A trial court may abuse its discretion where it fails to engage in a sound reasoning process." *Pieronek* at ¶ 20.

{¶14} In support of their respective motions to compel, the Carrs produced (1) the discovery request Demonte Carr sent to the State on June 7, 2023, (2) the curriculum vitae of their experts, (3) a transcript from a hearing in *State of Ohio v. Deshawn Coleman*, and (4) various emails, affidavits, and filings from other court cases. The third and fourth items were offered to establish credibility concerns about Mr. Mosher's qualifications, experience, and prior sworn testimony in other matters. The defense also informed the court that a different trial judge in another Summit County case had recently issued a ruling about CyberCheck evidence. The trial court was aware of the ruling and noted that "[t]he decision was that . . . CyberCheck had to turn over the stuff or it couldn't be used."

{¶15} The prosecutor informed the trial court that the State had complied with all discovery requests by providing defense counsel with the evidence currently in the State's possession. The court did not doubt the veracity of that representation but asked whether CyberCheck would be turning over the information the defense had requested. The State responded that CyberCheck/Mr. Mosher had yet to be subpoenaed or ordered by the court to do so. The State also argued that Mr. Mosher's hypothetical refusal to comply with a future subpoena or court order would be an action outside the State's control. The trial court responded that it was the State's obligation to issue any required subpoenas, as the State was the party seeking to admit the CyberCheck evidence.

{¶16} As discussions at the motions hearing continued, Mr. Mosher notified the court that the State had asked him for the information requested in the motion to compel. The trial court then placed Mr. Mosher under oath. Mr. Mosher testified that he was "getting confused on two

different things" because he also had been asked to divulge information about CyberCheck in another pending case. He testified that, in the other case, he had offered to physically meet with the defendant's experts "where we would spend days, and they can see how the algorithms and how the technology works." He indicated that he made that offer because he was unwilling to "blindly send [that information] off, even under a protective order . . . ." The State noted that the defense was requesting propriety information. It also noted that the defense had not requested a *Daubert* hearing to test Mr. Mosher's methodologies or his qualifications.

{¶17} The trial court acknowledged that the information the defense sought was not in the State's possession. Nevertheless, it indicated that it would not admit the CyberCheck evidence at trial without the defense being given the requested information. The trial court gave the State 48 hours to provide that information to defense counsel. When the State failed to comply with that order, the court excluded the CyberCheck evidence.

{¶18} Having reviewed the record, we must conclude that the trial court abused its discretion when it excluded the CyberCheck evidence pursuant to Crim.R. 16(L)(1). Initially, we note that only Demonte Carr sent a discovery request to the State on June 7, 2023. The request was sent by his attorneys, in his name, citing only his criminal case number. There is no indication in the record that his brother, Demetrius Carr, ever sent the State a written demand requesting the CyberCheck evidence. When Demetrius Carr filed a motion to compel, he cited his brother's request for discovery. Yet, Crim.R. 16 only requires the State to provide discovery "[u]pon receipt of a written demand for discovery *by the defendant* . . . ." (Emphasis added.) Crim.R. 16(B). It is unclear to this Court how the State could fail to comply with a discovery request in the case of Demetrius Carr when that request was never made. *See Papadelis*, 32 Ohio St.3d at 3 ("Crim.R. 16 contemplates an informal step – that being the demand or written request for discovery of one

party upon another party."). Because no one raised this issue in the trial court, however, we merely note the discrepancy in conducting our review.

{¶19} No one has suggested that the State willfully violated Crim.R. 16 by refusing to turn over the information the Carrs requested. *See Darmond*, 2013-Ohio-966, at ¶ 35. It is undisputed that the State gave the Carrs all the information it had in its possession. The question is whether the additional information the Carrs sought was "reasonably available to the state" even though it was not in the State's immediate possession. Crim.R. 16(B).

{¶20} The general rule in this district is that the State only must produce items in its possession and "inform the defendant of the whereabouts of documents in possession of another, if such documents are to be used against the accused at trial." *Luskin*, 1990 WL 203479, at *2 (9th Dist.). Yet, the role Mr. Mosher and CyberCheck play is less than clear, given that CyberCheck is a law-enforcement-only tool specifically designed to aid the State in conducting criminal investigations. This Court is mindful that even private entities can engage in state action in certain instances. *See, e.g., State ex rel. Ohio AFL-CIO v. Ohio Bur. of Workers' Comp.*, 2002-Ohio-6717, ¶ 13 (drug testing conducted by private employers to aid the State in determining workers' compensation eligibility constituted state action). The trial court did not expressly state why it determined the information was reasonably available to the State, but that determination is implicit in the trial court's order to exclude the evidence. If CyberCheck is acting as an instrumentality of the State, an argument exists that its data, algorithms, and software ought to be deemed reasonably available to the State. However, we need not decide that issue to resolve this appeal because, even assuming the State failed to satisfy its obligations under Crim.R.16, the record reflects the trial court did not engage in a sound reasoning process when it excluded the State's evidence. *See Pieronek*, 2019-Ohio-4305, at ¶ 20 (9th Dist.).

{¶21} As previously noted, a trial court must consider the circumstances behind any alleged Crim.R. 16 violation and "must impose the least severe sanction consistent with the purpose of the discovery rules." *Darmond*, 2013-Ohio-966, at ¶ 27. The exclusion of the State's evidence was not the least severe sanction available to the court under the circumstances herein. Although Demonte Carr requested the CyberCheck evidence four months before trial, the Carrs waited until two weeks before trial to file their motions to compel. They never notified the court there was an issue with discovery before that point, so there was no prior discovery order commanding the State to produce that information. The Carrs also never asked for a *Daubert* hearing or moved to suppress the evidence. Moreover, neither Mr. Mosher, nor CyberCheck was ever subject to a subpoena or court order to produce the information Demonte Carr sought to elicit. *Compare Cincinnati v. Ilg*, 2014-Ohio-4258, ¶ 7-9 (defendant subpoenaed the Ohio Department of Health and the program administrator for alcohol and drug testing when the prosecutor did not produce specific records from the breathalyzer machine used to test his blood alcohol concentration). Mr. Mosher did note that he had offered different criminal defense attorneys in Summit County the opportunity to have their experts meet with him, review his software, and see how it worked. It is unclear from the record whether he would have extended the same offer to the attorneys in this case or whether such a meeting would have sufficed. That option was never explored. Nor were the options of a continuance for the purpose of issuing subpoenas to Mr. Mosher/CyberCheck or scheduling a *Daubert* hearing. The court only gave the State 48 hours to comply with the discovery request and immediately excluded the evidence when the State failed to comply. *Compare State v. Woods*, 2014-Ohio-4429, ¶ 21 (4th Dist.). Under the foregoing circumstances, we must conclude that the court abused its discretion by doing so. Accordingly, the State's sole assignment of error is sustained.

III.

**{¶22}** The State's sole assignment of error is sustained. The judgments of the Summit County Court of Common Pleas are reversed, and the causes are remanded for further proceedings consistent with the foregoing opinion.

Judgments reversed,
and causes remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellant.

J. REID YODER, Attorney at Law, for Appellee.

NOAH C. MUNYER, Attorney at Law, for Appellee.

JEFF R. LAYBOURNE, Attorney at Law, for Appellee.